**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**333 CONSTITUTION AVENUE, NW**
**WASHINGTON, DC 20001**
***(Electronically Filed)***

| | |
|---|---|
| **JONATHAN GREEN,** | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| **UNITED STATES DEPARTMENT OF JUSTICE, TODD BLANCHE,** | ) **Case No.** |
| **To Serve:** | ) |
| Civil-Process Clerk for Jeanine Ferris Pirro<br>United States Attorney's Office<br>for the District of Columbia<br>601 D Street, NW<br>Washington, D.C. 20579 | ) |
| Todd Blanche,<br>Acting U.S. Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, D.C. 20530-0001 | ) |
| U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001 | ) |
| Terrance C. Cole, Administrator<br>Drug Enforcement Administration<br>700 Army Navy Dr<br>Arlington, VA 22202, USA | ) |
| **Defendant.** | ) |

---

**<u>COMPLAINT</u>**

---

Plaintiff, Jonathan Green, by counsel, for his Complaint against Defendant, United States Department of Justice, Todd Blanche, states as follows:

## A. JURISDICTION AND VENUE

1. Plaintiff seeks damages from Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et. seq.*, for retaliation for participating in protected EEO activity, and for hostile work environment harassment in retaliation for his protected activity. Accordingly, this Court has jurisdiction pursuant to the provisions of 28 U.S.C. §§1331 and 1343.

2. Pursuant to 28 U.S.C. § 1391(e), venue is proper in Washington, D.C. because the Department of Justice's headquarters is located in Washington, D.C.

## B. PARTIES

3. Plaintiff, Jonathan Green, at all times relevant to this Complaint, was a resident of Jefferson County, Kentucky. At all times relevant to this Complaint, Plaintiff was and is an employee of the U.S. Drug Enforcement Administration with his duty station located in Louisville, KY.

4. Defendant, U.S. Department of Justice, is an independent agency of the Executive Branch of the United States government responsible for overseeing the domestic enforcement of federal laws including by overseeing five federal law enforcement agencies.

5. The U.S. Drug Enforcement Administration is one of the five federal law enforcement agencies underneath the U.S. Department of Justice which enforces the controlled substances laws and regulations of the United States.

6. Todd Blanche is the Acting Attorney General of the Department of Justice, a federal agency, and is responsible for overseeing the mission of the U.S. Department of Justice.

7. Defendant's headquarters is located at U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, D.C. 20530-0001.

## C. EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff is a federal employee and was employed by the U.S. Department of Justice as a permanent employee during all times relevant to this Complaint.

9. Plaintiff has exhausted his administrative remedies as required and set forth under the procedures of 29 C.F.R. § 1614, *et. seq. See Final Agency Decision,* dated March 17, 2026, attached as **Exhibit A**.

10. Plaintiff's Complaint is timely because it is filed within ninety (90) days of Plaintiff's receipt of the Agency's Final Action.

## IV. FACTUAL ALLEGATIONS

11. Plaintiff, Jonathan Green ("Mr. Green"), adopts and incorporates the above allegations as if set forth fully herein.

12. On or about July 2012, Mr. Green was first hired by the U.S. Drug Enforcement Administration ("DEA"), as a Basic Agent Trainee.

13. On or about January 2017, Mr. Green was appointed as a Special Agent, GS-13, Step 6[1], for the U.S. Department of Justice, Drug Enforcement Agency ("DEA") in the Louisville, Kentucky Division.

14. During all times relevant to this Complaint, Mr. Green's third line supervisor was Jeffrey T. Scott, Special Agent in Charge ("SAC"), DEA, Louisville, Kentucky Division.

---

[1] As of October 8, 2023, the Mr. Green became a GS-13, Step 5.

15. During all times relevant to this Complaint, Mr. Green's second-line supervisor was Thomas Ivarie, Assistant Special Agent in Charge (ASAC Ivarie), and/or Erek Davodowich, Assistant Special Agent in Charge (ASAC Davodowich), Louisville, Kentucky Division.

16. During relevant times in this Complaint, Mr. Green's first line supervisors were Chris Shary, Group Supervisor ("GS Shary"), and/or Mike Lee, Group Supervisor ("GS Lee"), and/or Jennifer Traud, Group Supervisor ("GS Traud").

17. During his over 26 years of federal service, Mr. Green has served in the United States Air Force with the rank of senior captain upon his honorable discharge, worked for the U.S. Border Patrol as a finance supervisor, and worked for the DEA as a special agent/acting Group Supervisor for the last approximately 14 years.

18. From January 2013 until July 2018, Mr. Green was in an enforcement position in the DEA's Brownsville, Texas U.S. border office. While in this enforcement position, he was the lead case agent on multiple federal narcotics investigations that included trafficking, money laundering, and public corruption. On one occasion, during an Organized Crime Drug Enforcement Task Force investigation for which he served as the lead case agent for a unique and complex task force, it culminated in the arrests of sixteen (16) individuals, the seizure of $71,500.00 in assets, multiple kilograms of cocaine, over 6,000 lbs. of marijuana, and approximately 4,090 cartridges of ammunition destined for the Gulf Drug Cartel. That investigation also led to the arrest of a cartel boss who was smuggling nearly 2,000 pounds of marijuana a week over the three years prior to his arrest. During his tour of duty in Brownsville, Mr. Green also went undercover on numerous occasions to purchase various types of illegal narcotics and testified in federal proceedings.

19. In 2017, while in this enforcement role with the DEA, Mr. Green received an "Early Impact GS-13" (early promotion) for his productivity, expertise, and knowledge, as well as

becoming a Field Training Agent (FTA). From 2018 until 2022, Mr. Green served as the division recruitment coordinator for the Louisville, KY office. To be selected as a division recruitment coordinator, agents must have demonstrated a high degree of competence, experience, and productivity per the DEA Personnel Manual § 2300.31, Recruitment.

20. In late April / early May 2022, Mr. Green transferred back to an enforcement position. In October 2023, he moved to a division trainer position. As of May 2025, Mr. Green has been the acting Group Supervisor of the Special Services Unit, where he currently serves.

21. Mr. Green's current job duties as the acting Group Supervisor include recruiting duties for the division, coordinating training within the division and throughout DEA, serving as the Homeland Security Task Force coordinator for the division, serving as the Confidential Source coordinator for the division, teaching narcotics investigation techniques to state and local law enforcement officers, and teaching investigation techniques of investigations.

22. On August 12, 2022, Mr. Green learned that another applicant, Special Agent Lori Tomes, was promoted to a group supervisor position that Mr. Green had applied for.

23. On August 13, 2022, SA Tomes informed Mr. Green that she did not have to interview for the position. When asked how she received her promotion, SA Tomes indicated that she called a friend, who called a friend, who called SAC Scott. SA Tomes indicated that she had never met or spoken to the individual who gave her a positive reference. SAC Scott then hired Tomes without requiring or conducting an interview as required through the competitive placement laws, rules, and regulations.

24. On August 15, 2022, Mr. Green verbally complained to ASAC Davodowich and GS Lee that the competitive hiring laws, rules, and regulations were not followed when SA Tomes was hired for the group supervisor position without an interview. GS Lee then informed Mr. Green

that the DEA did not have a lot of female Group Supervisors and that Ms. Tomes was in a protected class. Mr. Green complained that he was part of a protected class as a partially disabled veteran and was being discriminated against based on gender and disability.

25. Mr. Green then told GS Lee that he was planning on filing an EEO complaint.

26. On August 17, 2022, days after complaining to ASAC Davodowich and GS Lee about the discriminatory promotion of SA Tomes and stating his intention to file an EEO complaint, Mr. Green was placed on administrative leave for five days by SAC Scott. During this period of administrative leave, Mr. Green was prohibited from entering the premises of any DEA office, and the memorandum ordered him to surrender his DEA issued credentials, badge, DEA issued firearm and all other government property in his possession.

27. The leave memorandum did not include a reason for the administrative leave in violation of DEA policy.

28. On or about August 19, 2022, ASAC Davodowich authored a memo about Mr. Green in which he knowingly omitted facts, data, and relevant information.

29. On September 29, 2022, SAC Scott formally requested a Suitability Review for Mr. Green "due to an ongoing concern about his mental and emotional health and anger issues." In his suitability request addressed to Erik Smith, Chief Inspector, Inspection Division, SAC Scott expressly references Mr. Green's numerous complaints about SAC Scott not promoting him and admits that he spoke to "another SES regarding SA Green's promotability."

30. In his suitability memorandum SAC Scott stated that on September 12, 2022, he attempted to have a fitness for duty evaluation counseling session with Mr. Green. SAC Scott goes on to expressly state in the suitability memorandum that Mr. Green expressly put him on notice that he had "already filed an EEO" a complaint against him.

31. In his suitability memorandum, SAC Scott expressly stated that after he was put on notice of Mr. Green's EEO complaint against him, he made the decision to escalate the nature of his request in the memorandum from a Human Resources/Employee Relations matter to the Suitability Review Protocol.

32. Before an employee is sent for a Fitness for Duty Evaluation; "a counselling session **must** be held by an appropriate management official, normally the immediate supervisor." *DEA Fitness for Duty Examination Policies*, § 2339.18(A).

33. "The specific conduct and content of the counselling session will vary depending on the circumstances. The objective is to establish for the record that: 1. The employee's performance, attendance, or behavior is deficient; 2. This deficiency is viewed by the supervisor and/or the employee as being due to a possible medical or psychiatric problem; and; 3. All the potential courses of action are fully discussed and documented." § 2339.18(B).

34. Rather than escalating his request from HR/ER to a suitability review, SAC Scott could have ordered Mr. Green to participate in the fitness for duty evaluation counseling or directed Mr. Green's first- or second-line supervisors to conduct the counseling as contemplated in DEA policies, however, he did not do so. *DEA Fitness for Duty Examination Policies*, § 2339.18(A).

35. The Request for Suitability Review violated DEA policies on referring an employee to Fitness-for-Duty Examination (Psychiatric) because (1) Mr. Green was not first "given a Fitness for Duty Examination (Medical) (FFDE(M)), with the examining physician's medical report recommending that the employee undergo an FFDE(P)" (§ 2339.17(A), Id.); and (2) before being sent to the FFDE, a counselling session was not held by the appropriate management official, normally the immediate supervisor. § 2339.18(A).

36. SAC Scott also admitted via his ROI Affidavit that prior to placing Mr. Green on limited duty status he was aware that Mr. Green had filed an "EEO complaint."

37. ASAC Davodowich confirmed and also admitted via his EEO Report of Investigation Affidavit that he knew about this protected activity.

38. On October 4, 2022, Mr. Green received an interim overall performance rating of "Successful" for FY 22.

39. Mr. Green's October 4, 2022, performance evaluation did not cite any concerns regarding his ability to safely perform his duties or inappropriate outbursts or unprofessional conduct. In fact, for FY 22, Mr. Green received a rating of "Excellent" for critical element "working relations." Mr. Green also received a rating of "successful" in the critical element of oral communication, and an "excellent" in written communication. Mr. Green received the following comment for his "excellent" working relations rating: "SA Green consistently volunteers to assist other agents in their investigations and pitches in wherever needed to help out in the office."

40. Mr. Green's FY 22 evaluation was completed by GS Lee and was reviewed and approved by ASAC Davodowich.

41. On October 5, 2022, Erik Smith issued a memorandum approving SAC Scott's request for a suitability review of Mr. Green. As outlined in the approval memorandum, Erik Smith's decision relied heavily upon the allegations made by SAC Scott in his suitability review memorandum, which included references to Mr. Green's protected activities.

42. As a result of SAC Scott's suitability memorandum and the approval of his request for a suitability review, on October 5, 2022, Mr. Green was provided with a limited duty status memorandum. Per the memorandum, Mr. Green was placed on limited duty status until further notice pending a review of his medical suitability to conduct his job duties as a Special Agent.

During this period of limited duty status, Mr. Green was prohibited from operating an official government vehicle, carrying a firearm, or carrying a Special Agency badge and credential. Mr. Green was further prohibited from participating in surveillance, arrests, searches, seizures, or in the development of new enforcement matters while assigned to Limited Duty status.

43. Mr. Green remained on limited duty status for six months, from October 5, 2022 to March 31, 2023.

44. After being placed on Limited Duty Status, Mr. Green was never notified why he was placed on limited duty status as required by DEA's Limited Duty Status policy, nor was he provided notice of his Limited Duty status duties as required by DEA's Limited Duty Status policy. *DEA Limited Duty Status Policies, § 2752.61 (C0(1)(a)*.

45. On January 4, 2023, in accordance with and as a direct result of the suitability review, Mr. Green was ordered to complete a psychological examination. Failure to take the psychological examination would have resulted in a loss of Mr. Green's security clearance and subsequently his job.

46. On or about January 13, 2023. SAC Scott was in Mr. Green's working area with an area full of other DEA employees, Task Force Officers, and stated that he could not find any good agents willing to move to the Paducah, Ky DEA Office, despite Mr. Green having previously requested the transfer which was denied by SAC Scott.

47. Despite requesting the suitability review, SAC Scott knew that Mr. Green was going to pass his medical examinations as evidenced by a text message he sent to "Gary" on March 1, 2023, which stated as follows:

> **GARY: "Sounds like your guy green is going to pass"**
>
> **SAC Scott: "Of course he is."**

48. On March 31, 2023, Erik Smith issued a memorandum to SAC Scott regarding the results of the suitability determination. As outlined in the memorandum, after undergoing psychological and psychiatric evaluations, the Health Services Unit determined that Mr. Green was deemed fully fit for duty without restriction. Erik Smith concurred with the findings of Health Services and stated that he was rescinding his limited duty order. Erik Smith further stated that "any ensuing inappropriate or unprofessional behavior should be treated as an administrative or personnel issue…."

49. During his time at DEA, prior to 2022, Mr. Green was never disciplined for unprofessional conduct, behavior, inappropriate outbursts or other misconduct and has consistently received positive performance reviews.

50. After being placed on Limited Duty Status in October 2022, in further retaliation, Mr. Green was subjected to a substantial change in working conditions because he was isolated from his peers, SAC Scott and ASAC Davodowich would not speak to him in the same manner, and he was subjected to derogatory comments from his supervisors.

51. Regarding the vague and unsubstantiated allegations contained in the Request for Suitability Review, Mr. Green denies that he ever engaged in behavior that affected his ability to safely perform the duties of his position or that he ever engaged in violent, threatening, or other inappropriate behavior that may negatively affect his suitability to perform his duties safely or effectively.

52. Being placed on Limited Duty Status and forced to submit to a psychological evaluation (in violation of DEA policies) has negatively impacted the Mr. Green's entire career: his performance review and prospects for promotion have been negatively affected since he was not able to perform his job for half the year; his professional reputation within the Agency has

been ruined by the seriousness of the personnel actions; the personnel actions will be permanently on his record for the rest of his career; and his over 26 years of federal service will be forever tarnished. Losing credentials, law enforcement badge, gun, and arrest and seizure powers have a particularly permanent and negative effect on a law enforcement employee's career.

53. The protected activity and suitability review contributed to Mr. Green's failure to receive an annual performance award bonus in March/April 2023 despite receiving an "Excellent" Annual Evaluation. Mr. Green previously received an annual performance award from SAC Scott when he also received an "Excellent" Annual Evaluation. DEA policy § 2451.18 (Approvals)(A)(2) indicates that an employee must have at least a summary rating of record of successful to receive an excellent rating. Mr. Green was not treated similarly to similarly situated DEA employees when SAC Scott failed to give him his annual performance award bonus and held him to a different standard in issuing the award.

54. The protected activity and suitability review contributed to Mr. Green's non-selection for Division Trainer, GS-1811-13, Louisville Field Division.

55. As a result of the retaliation and hostile work environment that Mr. Green experienced by the Agency and its management officials, including, but not limited to, SAC Scott and ASAC Davodowich, he has suffered loss of wages, salary, employment benefits, future retirement benefits, or other compensation, as well as emotional and psychological pain and suffering in the form of emotional distress, depression, anxiety, embarrassment, humiliation, and mental anguish.

## V. <u>CAUSES OF ACTION</u>

### COUNT I. VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. 2000e, *et. seq.*: RETALIATION & HOSTILE WORK ENVIRONMENT

56. Plaintiff adopts and incorporates the above allegations as if set forth fully herein.

57. Plaintiff is a member of a protected class because he engaged in protected activity.

58. Plaintiff engaged in protective activity as identified in the preceding paragraphs by filing an EEO complaint and notifying management of the discrimination he was experiencing.

59. After Plaintiff complained about gender discrimination, age discrimination, and reprisal to the Defendant, the Defendant not only failed to take appropriate remedial action and investigate, but also engaged in further acts of retaliation as identified above..

60. The Defendant had both actual and constructive knowledge of legally protected EEO activity and the complaints of discrimination.

61. After Plaintiff engaged in protected activity, Plaintiff was subjected to discrete acts of retaliatory harassment, including but not limited to those identified in the preceding paragraphs, by Defendant's management officials, including but not limited to Jeffrey T. Scott and Erek Davodowich.

62. As a result of his protected activity, Plaintiff was subjected to the acts and omissions described in the preceding paragraphs, including, but not limited to, the following allegations related to his hostile work environment claim: being placed on administrative leave for five days, being placed on limited duty status for six months, being ordered to undergo a psychological examination, not receiving his annual bonus, and non-selection for a position.

63. The discrete acts and omissions identified herein, including, but not limited, to the hostile work environment, are materially adverse because they are likely to dissuade employees from complaining or assisting in complaints about discrimination.

64. Additionally, the retaliatory harassment, acts, and omissions Plaintiff experienced subjected him to discriminatory intimidation, ridicule, and insult of such severity or pervasiveness as to alter the conditions of his employment and create an abusive working environment.

65. There is a causal connection between Plaintiff's protected activity and the adverse actions and hostile work environment he experienced.

66. Based on the conduct described in the preceding paragraphs, the Defendant unlawfully retaliated against Plaintiff, including subjecting him to a hostile work environment, because of his protected EEO activity and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et. seq.*

67. As a direct and proximate result of the Defendant's violations of Title VII, Plaintiff has suffered loss of wages, salary, benefits, and emotional and psychological pain and suffering in the form of emotional distress, embarrassment, humiliation and mental anguish such that he is entitled to compensatory damages, interest, expenses, and court costs in an amount greater than the minimum jurisdiction of this Court.

68. Pursuant to Title VII, Defendant is liable to Plaintiff for Plaintiff's costs and reasonable attorney's fees incurred herein.

**WHEREFORE**, Plaintiff requests that the Court grant the following relief:

A. Judgment in Plaintiff's favor against Defendant and an award of damages in an amount that will fairly and reasonably compensate Plaintiff;

B. An award of attorney fees, costs, and expenses incurred in prosecuting this action, pursuant to 42 U.S.C. § 2000e-5(k), and any other applicable law;

C. A trial by jury on all issues so triable; and

D. All other relief to which Plaintiff may be entitled.

Respectfully submitted,

**COUNSEL FOR PLAINTIFF:**

*/s/ Andrew C. Weeks*
Andrew C. Weeks
Whitney Railey
Legal Justice at Work, PLLC
20 F St NW, Ste 702
Washington, DC 20001
Phone: (502) 408-6173/(404) 313-3362
Fax: (502) 586-7176
acweeks@legaljusticeatwork.com
wrailey@legaljusticeatwork.com